John GALLAGHER, Plaintiff,

v.

METRO NORTH COMMUTER RAILROAD COMPANY and Peter Stangl, individually and as President of Metro North Railroad Company, Defendant.

No. 93 Civ. 3072 (MBM).

United States District Court,
S.D. New York.

March 15, 1994.

---

Eugene N. Harley, Jeremiah S. Gutman, Levy, Gutman, Goldberg & Kaplan, New York City, for plaintiff.

Mark S. Landman, Joanna L. Watman, Siff Rosen, P.C., New York City, for defendants.

## AMENDED OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff John Gallagher sues his employer, Metro North Commuter Railroad Company, and Peter Stangl, the President and General Manager of Metro North, under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, and under New York state law, for negligence and negligent infliction of emotional distress. Defendants move to dismiss Gallagher's second and third causes of action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. For the reasons set forth below, defendants' motion to dismiss is granted, subject to plaintiff's opportunity to replead his second cause of action.

Plaintiff's second and third causes of action arise from an October 27, 1990 train ride to Poughkeepsie, New York, during which Gallagher was instructed by a superintendent at Metro North to escort Stangl, his wife, and two of Stangl's friends in the cab of the engine, despite Gallagher's protests that Metro North's rules prohibited five people in addition to the train's engineer in the cab of the engine. (Complt. ¶¶ 7–8) One of Stangl's guests blew the train whistle and sat in the engineer's seat for a short time. (Complt. ¶ 10)

In March 1991, Stangl was nominated to be president of the Metropolitan Transportation Agency, the parent company of Metro North, and was awaiting confirmation by the New York State Senate. (Complt. ¶ 19) During this time, the news media carried several stories about the October 27, 1990 train ride. On March 7, 1991, Metro North inspectors questioned Gallagher about the events of October 27, 1990. (Complt. ¶¶ 16–17) Also at this time, Stangl and Metro North allegedly "made false statements to the news media concerning the events of October 27, 1990 in order to deflect charges of impropriety from ... Stangl." (Complt. ¶ 21) Gallagher subsequently experienced "stress and depression," and on March 11, 1991 signed himself into a psychiatric hospital, where he was diagnosed with a medical condition related to an incident which is the subject of his first cause of action. (Complt. ¶ 24) In August 1991, when Gallagher returned to work, Metro North informed him that his medical condition rendered him unfit to perform his former supervisory position. (Complt. ¶ 27) Gallagher requested that he work subject to his medical restrictions, but Metro North failed to find him a new position. (Complt. ¶ 28–29)

On May 7, 1993, Gallagher initiated this action. The complaint sets forth three causes of action. The second cause of action is a claim under FELA against Metro North for mental distress allegedly sustained by Gallagher as a result of Metro North's statements concerning the October 27 train ride and failure to prevent the release of Gallagher's medical reports to the press. (Complt. ¶¶ 40–41) The third cause of action is a pendent state law claim for mental distress allegedly sustained by Gallagher as a result of Stangl's statements to the press. (Complt. ¶¶ 45–46)

Defendants move to dismiss Gallagher's second cause of action because he has failed to plead facts that could support a claim that Metro North acted outrageously. It is well established that under FELA a claim based on emotional distress must be the result of "outrageous conduct" or "unconscionable abuse." *Atchison, T. & S. Fe Ry. v. Buell*, 480 U.S. 557, 566 n. 13, 107 S.Ct. 1410, 1416 n. 13, 94 L.Ed.2d 563 (1987); *Visconti v. Consolidated Rail Corp.*, 801 F.Supp. 1200, 1207–08 (S.D.N.Y.1992). Outrageous conduct is conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."

*Visconti*, 801 F.Supp. at 1209 (quotations omitted). It follows that the complaint must set forth information sufficient to suggest that Metro North's actions were outrageous and extreme. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). It is impossible to discern from plaintiff's complaint what statements, if any, Metro North made and the setting in which they were made. Accordingly, plaintiff has not pleaded outrageous or unconscionable conduct, as required under FELA.

■ Plaintiff's claim that Metro North "fail[ed]" to prevent the distribution of Plaintiff's confidential medical reports to the press" is similarly vague. (Complt. ¶ 40) Plaintiffs fails to allege what confidential medical records were distributed to the press and the source of Metro North's duty to prevent the release of these records. *See Milam v. Herrlin,* 819 F.Supp. 295, 304 (S.D.N.Y.1993) (plaintiff must offer "more than conjecture and surmise regarding this duty and the Defendants alleged breach of it"). This cause of action therefore is dismissed, subject to plaintiff's opportunity to amend its complaint to plead facts that would support an inference that he was subject to unconscionable abuse. Because plaintiff ultimately may be unable to allege the type of outrageous conduct required to state a claim for emotional distress under FELA, it is not necessary to determine at this juncture whether plaintiff's claim will fail also for lack of physical injury resulting from this conduct. *See Masiello v. Metro–North Commuter R.R.,* 748 F.Supp. 199, 204 (S.D.N.Y.1990) ("There is much case law to support [the] contention that FELA actions lacking any physical component should be disallowed.") The Supreme Court recently granted certiorari to consider the issue of whether wholly emotional injuries are actionable under FELA. *See Consolidated Rail Corp. v. Gottshall,* —— U.S. ——, 114 S.Ct. 299, 126 L.Ed.2d 247 (1993).

■ Defendants seek to dismiss Gallagher's third cause of action against Stangl on the ground that it actually is a claim for defamation, and is thus time-barred by the applicable statute of limitations. In determining the applicability of the statute of limi-

tations to a claim, "[w]e look to the reality and the essence of the action and not its mere name." *Ramsay v. Mary Imogene Bassett Hosp.,* 113 A.D.2d 149, 151, 495 N.Y.S.2d 282, 284 (3d Dep't 1985) (quotation omitted). Under New York law, "[a] communication is defamatory ... if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Morrison v. National Broadcasting Co.,* 19 N.Y.2d 453, 460, 280 N.Y.S.2d 641, 645, 227 N.E.2d 572, 574 (1967) (quotation omitted). Plaintiff's third cause of action is premised upon Stangl's "false and misleading statements to the press and other persons." (Complt. ¶ 44) According to the complaint, Stangl made these allegedly false statements "in order to deflect charges of impropriety from Defendant Stangl," (Complt. ¶ 21) and, presumably, toward plaintiff. Stangl's statements allegedly caused "Plaintiff to have problems with his employment with Metro North." (Complt. ¶ 45) Based on plaintiff's allegations, it is difficult to conceive what harm plaintiff could have experienced from Stangl's ·allegedly false statements except harm to his reputation. *See Noel v. Interboro Mut. Indem. Ins. Co.,* 31 A.D.2d 54, 55, 295 N.Y.S.2d 399, 400 (1st Dep't 1968), *aff'd,* 29 N.Y.2d 743, 326 N.Y.S.2d 396, 276 N.E.2d 232 (1971). Plaintiff reveals as much in his opposition papers when he argues that Stangl violated his duty "not to humiliate and destroy" plaintiff. (Pltf.Mem. at 15) Because plaintiff's claim against Stangl is in essence one for defamation, "plaintiff may not circumvent the one-year limitation applicable to defamation." *Ramsay,* 113 A.D.2d at 151, 495 N.Y.S.2d at 284; *see also Morrison v. National Broadcasting Co.,* 19 N.Y.2d at 460, 280 N.Y.S.2d at 645, 227 N.E.2d at 574 ("if the plaintiff has a cause of action, he should not be permitted to sue on it beyond the period within which he could have prosecuted a claim against the defendants for having caused the identical injuries by telling falsehoods about him"); *Kartiganer Assocs. v. Town of Newburgh,* 57 A.D.2d 857, 858, 394 N.Y.S.2d 262, 263 (2d Dep't 1977). Plaintiff alleges generally that the slanderous statements were made in early March 1991, and plaintiff filed his com-

plaint on May 7, 1993, well after the one-year limitations period had expired. Accordingly, plaintiff's third cause of action is dismissed as untimely. N.Y.Civ.Prac.L. & R. § 215(3).

SO ORDERED.